UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY ) <br> COMMISSION, ) <br>         Plaintiff ) <br> ) <br>   and ) <br> ) <br> AHMED CONDE, ) <br>         Plaintiff-Intervenor ) <br> ) <br>   vs. ) <br> ) <br> EBY-BROWN COMPANY, LLC et. al, ) <br>         Defendants. ) | 1:06-CV-1083 SEB/JMS |

## ORDER GRANTING IN PART
## DEFENDANT'S MOTION TO ENFORCE SETTLEMENT

This matter is before the Court following an evidentiary hearing on Defendant Eby-Brown Company, LLC's (Eby-Brown) motion to enforce settlement agreement with Plaintiff-Intervenor Ahmed Conde and for attorney's fees and costs. Mr. Conde, by counsel, filed a brief in opposition to the Defendant's motion. At the conclusion of the hearing, after receiving evidence and argument from both parties as well as abbreviated comments from counsel for Plaintiff, the Equal Employment Opportunity Commission (EEOC) (who is not a party in interest in the matter before the court), the Court took the motion under advisement.

Having now fully considered the evidence adduced, the arguments advanced and the controlling legal authorities, the Court here enters its findings of fact and conclusions of law, on the basis of which the Motion to Enforce Settlement shall be granted in part and denied in part; Defendant's motion for an award of attorney's fees and costs against Mr. Conde incurred in conjunction with this motion shall be denied.

## **BACKGROUND FACTS**

This lawsuit was initially filed on July 17, 2006, by the EEOC on behalf of itself and Ahmed Conde against Eby-Brown, setting forth allegations of unlawful employment practices under Title VII (42 U.S.C. § 2000 e-5(1) and (3)) and 42 U.S.C. § 1981a. Three months following the filing of this action, Mr. Conde sought, and on December 13, 2006, received, permission from the Court to intervene as a Plaintiff to assert various additional civil rights and state law claims against Eby-Brown. Discovery ensued and in midsummer the parties were ordered to appear on July 9, 2007, in person and by counsel, for a settlement conference before Magistrate Judge Jane Magnus-Stinson.

The conference began at 1:30 pm. Approximately 6:00 pm that evening, following protracted discussions and negotiations among the parties and their respective counsel, which included the exchange of seven separate offers and counteroffers, the Magistrate Judge, in an effort to break the impasse between the parties, delivered to each side separately the following typewritten inquiry:

2

  Plaintiff:  Will you take $100,000 in full settlement of all claims including attorney fees with further agreement of a consent decree in substantially the same form as attached hereto?

_____ yes     _____ no

_____     _____
 Attorney for Plaintiff      Plaintiff

*****

Defendant:  Will you pay $100,000 in full settlement of all claims including attorney fees and agree to a consent decree in substantially the same form as attached hereto?

_____ yes    _____ no

_____   _____
 Attorney for Defendant    Defendant

Def.'s Exhs. 1, 3.

  Each side separately caucused and thereafter responded to the Magistrate Judge's question in the affirmative by marking the "yes" line and signing the forms – Mr. Conde signed as did his attorney; Ms. Farnsworth, the EEOC attorney, signed; and Mr. Golden signed as counsel for Eby-Brown.  Ms. Farnsworth, Mr. Conde and his attorney, Mr. Conteh, were physically separated from Mr. Golden and his client representatives during the course of the "shuttle diplomacy" being conducted by the Magistrate Judge.  And even after all the parties had signed their respective forms, the two sides did not directly confer with one another or directly discuss or exchange the executed forms; the forms were simply returned by both sides to the Magistrate Judge, whereupon, given the

lateness of the hour and in light of their having reached an agreement, the conference ended.  (Def. Exhs 1 and 3).

If that were the extent of all that occurred with regard to this settlement agreement, the instant dispute likely would never have arisen.  However, complications began when Defendant's counsel, Mr. Golden, who, despite having marked the "yes" line on the form, added in handwriting the words, "subject to discussions with Judge @ 6:50 pm."  This "subject to" addition by Mr. Golden was not revealed to the EEOC attorney or to Mr. Conde's attorney at that time, because Mr. Golden had indicated privately to Magistrate Judge Stinson that he wanted an opportunity to try to negotiate certain changes to the proposed Consent Decree between Eby-Brown and the EEOC before giving his final approval to the Decree.  However, according to Mr. Golden, he had agreed and believed the other parties had also agreed both as to the amount of the settlement payment and the scope of the agreement, to wit, all of Plaintiff/Intervenor's claims.

The matters which Eby-Brown's counsel sought to raise with EEOC's counsel included:  1) a reduction in the length of the term of EEOC's supervision of Eby-Brown under the decree from 5 to 2 years; 2) a split of the $100,000 settlement amount so that the Consent Decree, which was to be made public, would reflect that Eby-Brown's payment was one-third of the actual amount, with the remaining two-thirds to be kept confidential from the public and subject to a confidentiality agreement with Mr. Conde; 3) a no-reinstatement or rehire provision regarding Mr. Conde's future employment with

4

Eby-Brown; and 4) a full release of Eby-Brown by EEOC and Mr. Conde. Each of these issues pertained only to the terms of the Consent Decree between Eby-Brown and EEOC.

In her docket entry for July 9, 2007, in recording the results of the parties' settlement discussions, the Magistrate Judge noted: "Substantial progress made toward settlement. Counsel are to continue to work on details of settlement documents." Magistrate Judge Stinson also scheduled a follow-up telephonic status conference between the parties and the Court for the following week, on July 17, 2007, thus allowing time for Eby-Brown and EEOC to resolve the remaining issues between them as raised by Mr. Golden and to allow Mr. Golden sufficient time to draft a final settlement agreement for execution by Eby-Brown and Mr. Conde.

Following the July 9 settlement conference, Mr. Golden contacted counsel for the EEOC, Ms. Farnsworth, to discuss his proposed modifications to the Consent Decree. Ultimately his efforts to amend the Consent Decree were unsuccessful; EEOC held firm, insisting that Eby-Brown enter into the original Consent Decree. In the face of EEOC's refusal to change the Consent Decree, Mr. Golden approached Mr. Conde's counsel, Mr. Condeh, to raise the possibility of their entering into a side deal whereby Mr. Conde would accept the one-third/two-thirds payout plan and execute the related confidentiality agreement. Mr. Conde's counsel rejected that proposal out of hand, indicating that in all these matters his client was fully aligned and in agreement with the EEOC position. By July 17, 2007, in another telephone status conference with the Court, the parties informed

5

the Court that Mr. Golden's efforts to revise the Consent Decree between Eby-Brown and the EEOC had not been successful, prompting Magistrate Judge Stinson's notation on the Court docket that "settlement negotiations are at impasse."

Nearly a week thereafter, on or about the August 23, Mr. Golden again contacted EEOC's counsel, Ms. Farnsworth, to inform her that Eby-Brown would abandon its request for a split in the $100,000 payout amount in the Consent Decree. Upon being notified of Eby-Brown's concessions, Ms. Farnsworth in a reciprocal gesture, agreed to reduce the term of supervision of Eby-Brown under the Consent Decree from five years to two years.

During the time that Mr. Golden had been engaged in discussions with Ms. Farnsworth concerning the Consent Decree, he was simultaneously drafting a separate agreement for execution by Eby-Brown and Mr. Conde, as Plaintiff-Intervenor, to resolve their part of the case. Mr. Golden intermittently contacted Mr. Conteh during the drafting process to discuss the contents of his proposed agreement, which was intended to constitute the written version of their July 9 settlement agreement. In the course of these conversations between the attorneys, Mr. Conteh never indicated that he or his client had any objections to any specific provisions in the settlement document or with the underlying settlement agreement itself or that Mr. Conde was backing away from his prior promises.

After the Consent Decree was finalized and signed by Eby-Brown and the EEOC on August 27, no issues remained unresolved between them.  Mr. Conde and his attorney were not parties to or signatories of the Consent Decree and therefore did not participate in that part of the settlement process.  The next day, August 28, Mr. Golden forwarded to Mr. Conteh his proposed Complete Release and Settlement Agreement  (Def. Exhibit 4) to obtain the signatures of both  Mr. Conde and his counsel.  (The EEOC was not a party to this agreement.)  Following Mr. Conteh's receipt and review of the tendered proposed agreement, he telephoned Mr. Golden to convey his approval of the agreement and to inform Mr. Golden that he would meet with Mr. Conde in the near future to secure his agreement and signature.  Mr. Conteh added that he personally was relieved that this matter was nearing completion.

One week later, on August 28, 2007, Mr. Conteh telephoned Mr. Golden to report that he had just completed his meeting with Mr. Conde during which session he reviewed and discussed the tendered settlement agreement document, but that Mr. Conde had left his office without signing it.  Mr. Conteh indicated that he planned to meet with Mr. Conde again soon after Labor Day to further discuss the matter with him.  Two days following the Labor Day holiday, Mr. Conteh reported back to Mr. Golden that his client had again refused to sign the agreement.  In response to Mr. Golden's inquiries about the reasons for Mr. Conde's refusal, Mr. Conteh said that Mr. Conde had voiced to him no specific objections.  At this point, Mr. Golden and Mr. Condeh brought Ms. Farnsworth

7

into their telephone conference and reported to her the problem that had arisen; she informed Mr. Conteh that the Consent Decree had already been signed by herself and by Eby-Brown thus finalizing their agreement but, in an effort to help, she herself would arrange to meet with Mr. Conde in the near future to discuss the situation with him and to attempt to respond to any issues or questions he might have. On September 11, 2007, after Ms. Farnsworth had met with Mr. Conde, she telephoned Mr. Golden to report that she had not succeeded in convincing Mr. Conde to sign the settlement agreement.

Between the July 9, 2007, settlement conference and the transmission of the proposed formal settlement agreement (Exhibit 4) by Mr. Golden to Mr. Conde, Mr. Conde had played no part in any of the discussions or negotiations between the EEOC and Mr. Golden (with the exception of the single, brief conversation initiated by Mr. Golden with Mr. Conteh to determine if there was a possibility of their making a side agreement to wire around EEOC's refusal to change the Consent Decree). In addition, neither Mr. Conde nor Mr. Conteh had communicated any change of position with respect to the agreement entered into on July 9, 2007, when they both marked "yes" on the form in to indicate their acceptance of the settlement proposal framed by the Magistrate Judge.

On September 13, 2007, two days after Ms. Farnsworth's report to Mr. Golden of her failed discussions with Mr. Conde, another teleconference occurred among the lawyers and Magistrate Judge Stinson during which Mr. Conteh informed the Court that,

8

though his client had initially agreed to the settlement agreement terms on July 9, 2007, he was now refusing to sign the proposed written settlement agreement that had been tendered by Mr. Golden. Judge Stinson reminded the parties that the settlement had been acceptable to both Mr. Conde and the EEOC on July 9, 2007, with the only issue remaining at that time being the disclosure/nondisclosure of the full amount of the $100,000 settlement payment. Given that the parties appeared once again to be at impasse, Magistrate Judge Stinson scheduled another in-person conference for the attorneys and parties on September 18, 2007, to attempt once more to resolve their disputes.

On September 18, during the conference with Judge Stinson, Mr. Conteh stated that it was his client's position that, because the confidentiality issue had not been finally resolved as of the conclusion of the July 9, 2007, conference, no agreement was actually reached at that time. Further, he explained, Mr. Conde's position was that, when he signed the July 9, 2007, settlement agreement form tendered by the Magistrate Judge, he did so only because Ms. Farnsworth had signed it. Mr.Conde also indicated that, after July 9, his concerns increased over the sufficiency of the $100,000 settlement amount in light of what he characterized as his mounting personal financial problems as well as over the full extent of the emotional and psychological pain he had been caused to suffer because of Eby-Brown's wrongful acts against him. Mr. Conde confirmed, in response to the Magistrate Judge's inquiry, that though his lost wages had totaled only $10,000, at

9

this time he no longer regarded the remaining $90,000 as adequate compensation for his remaining injuries.  Consequently, Mr. Conde was now seeking an increased settlement payment from Eby-Brown in the range of $150,000 - $200,000.  In addition, Mr. Conde objected to certain portions of Mr. Golden's proposed written settlement agreement, specifically, the provision in which Eby-Brown refused to admit or concede the substantive merits of Conde's allegations, including any liability or wrongdoing on its part, as well as the non-disparagement clause and the confidentiality clause.  Despite Mr. Conde's rejection of his settlement agreement, Ms. Farnsworth reported that the EEOC would stand by the original agreement.

The parties have stipulated with regard to above described facts that they have no material disputes.

## ANALYSIS

We begin our analysis with a discussion of the basic underlying legal issues involving contract analysis.  A motion to enforce a settlement agreement presupposes an enforceable agreement. Mr. Conde's primary assertion is that no enforceable agreement was ever reached between himself and Eby-Brown.

In <u>Troutwine Estates Development Company, LLC v. Comsub Design and Engineering, Inc.</u>, 854 N.E.2d 890, 897 (Ind.Ct.App. 2006), *trans. denied. 2007,* the Indiana Court of Appeals laid out the essential elements of a contract, as follows:

> The existence of a contract is established by evidence of an offer, acceptance, consideration, and a manifestation of mutual assent. Ind. Dep't. of Corr. v. Swanson Servs. Corp., 820 N.E.2d 733, 737 (Ind.Ct.App. 2005), *trans. denied*. "To bring a contract into existence, an offer must be extended and the offeree must accept it, the communication of acceptance being crucial. Thus, a meeting of the minds between the contracting parties is essential to the formation of a contract." *Id.* This meeting of the minds must extend to all essential elements or terms for a contract to be binding... . "If a party cannot demonstrate agreement on one essential term of the contract, then there is no mutual assent and no contract is formed." Kelly v. Levandoski 825 N.E.2d 850, 857.

"To be enforceable, contracts must be sufficiently definite; amounts and prices must be fixed, or be subject to some ascertainable formula or standard." Inman's Inc. v. City of Greenfield, 412 N.Ed.2d 126, 129 (Ind.Ct.App. 1980).

A meeting of the minds of the contracting parties, having the same intent, has been deemed essential to the formation of a contract under Indiana law. Further, "[t]he intent relevant in contract matters is not the parties' subjective intents but their outward manifestation of it. A court does not examine the hidden intentions secreted in the heart of a person; rather it should examine the final expression found in conduct. The intention of the parties to a contract is a factual matter to be determined from all the circumstances." Dorsetts Auto Sales, Inc. v. C.H.Garmong & Son., Inc., 859 N.E.2d 1286, at *5 (Ind.Ct.App. 2007) (quoting Zimmerman v. McColley, 826 N.E.2d 71, 77 (Ind.Ct. App. 2005)).

Finally, a settlement agreement is to be construed and enforced like any other

contract, with the general rules applying. <u>Georgos v. Jackson</u>, 790 N.E.2d 448, 453 (Ind. 2003) ("Settlement agreements are governed by the same general principles of contract law as any other agreement.")

According to Seventh Circuit precedent, federal law requires that employment agreements receive an augmented level of review, namely, a determination of whether they were knowingly and voluntarily entered into, even though the enforceability of such contracts is generally governed by state law.  In <u>Dillard v. Starcon International</u>, 483 F.3d 502, 507 (7th Cir. 2007) (citations omitted), the Court held:

> [I]n the employment context, a requirement that the settlement be "knowing and voluntary" has been added as a matter of federal law because of the important "federal policy underpinnings" of employment discrimination law. Whether a settlement of an employment discrimination claim was entered into "knowingly and voluntarily" is determined by the "totality of the circumstances."

In Footnote 4 to the above-cited opinion, the Court further explained:  "[T]he federal law 'knowing and voluntary' requirement in the employment discrimination context is a prerequisite to being satisfied after the existence of a binding agreement under state contract principles has been established."

A.  Agreement to Settle for $100,000:

The acceptance by all three parties – Eby-Brown, the EEOC, and Mr. Conde (personally and by counsel) -- of the settlement proposal suggested by the Magistrate

Judge at the conclusion of several hours of settlement negotiations among all the parties created a binding agreement as to the terms included therein. Based on the unequivocal, undisputed evidence, it is clear that there was an offer, an acceptance, consideration and mutual assent. Eby-Brown offered to pay $100,000 to settle all the claims against it; the EEOC and Mr. Conde accepted that amount and agreed to dismiss all the claims against Eby-Brown; consideration for the agreement was the payment by Eby-Brown in exchange for a dismissal of all claims (including attorney's fees) against Eby-Brown and the execution of a full release; the parties' mutual assent was evidenced by their signatures which they affixed to the settlement document. The parties intended to reach an agreement when they signed the forms from the Magistrate Judge and, in so doing, they acted knowingly and voluntarily. Thus, all the elements of a binding contract were satisfied on July 9, 2007, at the conclusion of the conference with the Magistrate Judge.

B.   Supplemental Caveat:

Mr. Golden's supplemental caveat ("subject to discussions with Judge @ 6:50 p.m."), which words he added next to his signature, evidenced his acceptance of the agreement and did not alter the agreed-upon terms, for the reasons laid out below.

We have previously noted in detail above that Mr. Golden, acting on behalf of Eby-Brown, sought an opportunity to try to modify certain terms of the Consent Decree in an apparent effort to ameliorate what he feared might be bad publicity for Eby-Brown

when the full settlement amount was disclosed; Mr. Golden wanted an opportunity to try to convince EEOC to amend the terms of the Consent Decree to reflect only a portion of the settlement amount. This caveat added by Mr. Golden was not communicated to the EEOC or to Mr. Conde or Mr. Conde's attorney at the conclusion of the July 9 negotiations. Thus, in terms of what the parties knew at the time, with the exception of Mr. Golden, of course, by each of them marking "yes" on the form and signing it, a final agreement had been reached. In addition, Mr. Golden represented to the Court at the hearing that he believed and intended at the time he signed the form on July 9 that Eby-Brown was obligating itself to pay the $100,000 pay out to Mr. Conde in exchange for a dismissal and release of all his claims against Eby-Brown..

The words penned by Mr. Golden and included on the Magistrate Judge's settlement agreement form concerning additional negotiations with EEOC over certain provisions in the Consent Decree did not prevent, foreclose or negate their agreement for the additional reason that the agreement they all entered into expressly referenced post-settlement discussions and possible modification(s) of the Consent Decree between Eby-Brown and the EEOC, based on these words included in the settlement: "with further agreement of a consent decree in substantially the same form as attached hereto." The reference to a consent decree in "substantially the same form" as the one attached to their agreement obviously left room for additional negotiations and revisions of the Consent Decree, apart from the agreement as to the settlement amount of payment and the

14

dismissal/release of all claims against Eby-Brown.

In addition, the Consent Decree clearly was an agreement only between the EEOC and Eby-Brown; Mr. Conde did not negotiate its terms, was not a party to it and was not bound by it. Thus, whatever uncertainty remained after the July 9 settlement proposal exchange based on Mr. Golden's addendum, Mr. Conde's interests were not implicated. Mr. Conde's interests were fully resolved when he agreed to accept the $100,000 settlement payment in return for his dismissal of all his claims, including attorney's fees against Eby-Brown.

Our confidence in reaching this conclusion is buttressed by the additional fact that, not only was Mr. Conde not a party to the Consent Decree, but he was totally absent from the negotiations that occurred between Eby-Brown and the EEOC following the July 9, 2007, conference. No communications of any sort occurred between Mr. Conde (or his attorney) and Mr. Golden during the post-agreement period. If Mr. Conde harbored any doubts or misgivings about the agreement he had reached, they remained entirely private for a very long time.

Thus, in summary, the July 9 agreement (Def. Exhibits 1 and 3) created a binding settlement contract which clearly left room for further negotiations regarding certain terms of the Consent Decree. Even if the "subject to" phrase added by Mr. Golden to his acceptance of the settlement proposal were construed so as to have prevented a final agreement from being reached, the remaining contingency affected only the Consent

Decree involving Eby-Brown and the EEOC.  It had no affect on the agreement between Eby-Brown and Mr. Conde, which was entirely separate from the Consent Decree.

C.  Additional Settlement Provisions:

After the July 9 agreement was reached among all the parties, Mr. Golden set about drafting a proposed formal settlement agreement entitled "Complete Release and Settlement Agreement" (Def. Exh 4) for execution by Eby-Brown and Mr. Conde.  That proposal, in addition to referencing the terms of the July 9 agreement, added various other provisions, including a statement of no fault/no admission of liability on the part of Eby-Brown with respect to Mr. Conde's original allegations in the complaint, a mutual non-disparagement clause and a confidentiality clause.

After receiving the draft agreement, Mr. Conde's attorney informed Mr. Golden that he, as the attorney, had no objections to the terms of the formal settlement agreement and would discuss it with Mr. Conde in order to get the document finally signed.  Apparently in something of a surprise even to his attorney, Mr. Conde refused to sign the proposed agreement.  Thereafter, Mr. Conde has expanded his refusal to sign the settlement agreement to include rejection of the underlying July 9 agreement as well.  Mr. Conde's stated reasons for seeking to rescind the July 9 agreement include his recently revised demand for payment exceeding the $100,000 settlement amount originally agreed upon in order to more fully compensate him for his emotional injuries which resulted from his employment discrimination.  Further, Mr. Conde has explained that, at the time

he signed the July 9 agreement, he did so merely because Ms. Farnsworth did and thus he should not be bound by his action. (Mr. Conde stopped short of attempting to explain away the fact of his lawyer's endorsement of the agreement at the same time).

These "reasons" proferred by Mr. Conde as the basis for his rejection of his prior agreement are entirely unconvincing to the Court as legal or factual justification for allowing him to renege on his promises. Mr. Conde's belated attempt to rescind his prior agreement and fulfil the terms to which he clearly committed himself appears to us to be little more than "settlers' remorse".

That said, the evidence adduced at the hearing also make clear that many of the provisions in Exhibit 4 were, in fact, never specifically discussed with or negotiated between Eby-Brown and Mr. Conde or agreed to by Mr. Conde. While attorneys and judges who are experienced in the mechanics of settlement negotiations and agreements tend to view the kind of provisions included in Defendant's Exhibit 4 as boilerplate, those terms are not necessarily routine or non-controversial or innocuous to a non-expert party such as Mr. Conde, who is entitled to fully understand them and voluntarily agree to them before his is bound by them. That process never occurred here with regard to Exhibit 4.

Consequently, the Court will not enforce the formal settlement agreement as set out in Exhibit 4, with the exception of requiring Mr. Conde to execute a full release of any and all of his claims – past, present and future – including attorney's fees, against Eby-Brown in exchange for the $100,000 payment to him. A release was expressly contemplated in and included as part of the July 9 agreement and, in any event, none of

the parties, most particularly Mr. Conde or his attorney, disputes this part of the agreement.

Concerning Defendant's request for an award of attorney's fees and costs against Mr. Conde to offset the expenses Eby-Brown incurred in conjunction with the enforcement of the parties' settlement agreement, the Court denies that request and shall require each side to bear its own fees and costs.

## CONCLUSION

For the reasons explicated above, Defendant's Motion to Enforce the July 9, 2007, settlement agreement is **GRANTED** in part. Eby-Brown shall forthwith pay to Mr. Conde the amount of $100,000 in full settlement of the claims against it by Mr. Conde, and Mr. Conde shall execute a full release in favor of Eby-Brown of each and all of his claims -- past, present and future -- arising from his employment with Eby-Brown and this litigation. These rulings do not directly implicate the interests of the EEOC who previously entered into a separate agreement with Eby-Brown which both sides continue to stand by. Defendant's request for recovery of its attorney's fees and costs incurred in filing this motion is also **DENIED.**

IT IS SO ORDERED:

Date:  11/21/2007

*[signature: Sarah Evans Barker]*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Eugene A. Boyle
NEAL GERBER & EISENBERG LLP
eboyle@ngelaw.com

Swaray Edward Conteh
contehlaw@att.net

Kelley Bertoux Creveling
BAKER & DANIELS
kbcrevel@bakerd.com

Michelle Eisele
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
michelle.eisele@eeoc.gov

Jo Ann Farnsworth
EEOC
joann.farnsworth@eeoc.gov

Gerald A. Golden
NEAL GERBER EISENBERG LLP
ggolden@ngelaw.com

Laurie A. Young
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
legal.station@eeoc.gov